COURT OF APPEALS OF VIRGINIA

Present: Judges McClanahan, Haley and Beales
Argued at Salem, Virginia


CHARLES CLIFFORD McCOY

                                          OPINION BY
v.       Record No. 3087-08-3          JUDGE RANDOLPH A. BEALES
                                         JANUARY 12, 2010
LISA COLLINS McCOY


FROM THE CIRCUIT COURT OF TAZEWELL COUNTY
Teresa M. Chafin, Judge

Robert M. Galumbeck (Galumbeck, Dennis & Kegley, Attorneys, on
briefs), for appellant.

Richard A. Forster (James R. Henderson, IV; Henderson & Forster,
PLLC, on briefs), for appellee.


Charles Clifford McCoy (husband) appeals from an order finding him in civil contempt for

refusing to provide health insurance to Lisa Collins McCoy (wife) as provided under an agreement

that was incorporated into their final decree of divorce. He argues that the health insurance

provision is a form of spousal support and, thus, he was no longer obligated to provide the insurance

after wife remarried. We agree with the trial court that this provision in the parties' property

settlement agreement (PSA), as incorporated into the final decree of divorce, is not spousal support,

and, therefore, husband was in contempt of court when he stopped providing health insurance for

wife.

I. BACKGROUND

Husband and wife were divorced in May 2001. Prior to the divorce, on November 11,

2000, they signed a PSA, which was incorporated into the final decree of divorce. The PSA was

divided into sections. In Section III, "Spousal Support, Maintenance & Alimony," husband

waived all rights to spousal support without condition. In this same section, wife "specifically release[d] and indemnifie[d] the *Husband* from any and all claims for her support and maintenance as his *Wife*, provided that the *Husband* shall, at all times, perform his obligations as stated in this Agreement . . . ." This section then provides that husband will not be allowed to discharge his obligations under the agreement through bankruptcy proceedings.

In the next sections, husband takes responsibility for various marital debts and the mortgage on the marital home while wife continues to live there, and he also obligates himself to make various payments to wife or see that she receives the value of particular assets.

In Section VI, labeled "Insurance," husband is obligated to "maintain health insurance of like quality of the Wife as she currently enjoys until she obtains employment offering comparable insurance."

Aside from one earlier period of non-payment, which is not involved in the appeal here, husband paid wife's health insurance premiums until May 2006, at which time he stopped. Wife continued to pay the premiums so that the insurance would not lapse. Wife then remarried in the fall of 2007.

Wife filed a show cause against husband for his failure to provide health insurance. After hearings on the issues, the trial court issued a letter opinion on May 8, 2008, finding that the PSA was not ambiguous and that both parties had waived spousal support in the agreement. The trial court, however, concluded that the health insurance provision was not spousal support; therefore, wife's remarriage did not nullify husband's obligation to provide and pay for the insurance. The court then entered an order on November 24, 2008, finding husband in contempt and sentencing him to six months in jail unless he purged himself of the contempt by paying wife for the premiums that she paid, taking over the premium payments for the insurance, and paying wife's attorney's fees and costs.

## II. ANALYSIS

### A. Jurisdiction and Mootness

During oral argument in this case, husband informed this Court that, after he had noted his appeal of the November 24, 2008 contempt order, he had moved the trial court to vacate the contempt order, contending that wife had perpetrated a fraud on the court. The trial court then apparently heard argument on husband's motion and ultimately entered an order on March 26, 2009 that vacated the November 24, 2008 order. This order of the trial court did not simply stay enforcement of the contempt order or the final decree. Instead, the March 26, 2009 order explicitly "vacated" the "prior orders" that had been entered in the contempt proceeding (which would necessarily include the contempt order that husband appealed to this Court) and set a hearing date for April 22, 2009. Neither the trial court nor husband petitioned this Court for authority to enter the March 26, 2009 order.[1] Husband now claims the March 26, 2009 order made the earlier November 24, 2008 order a nullity, and, therefore, this appeal is moot. See Spotsylvania County Sch. Bd. v. Seaboard Surety Co., 243 Va. 202, 219, 415 S.E.2d 120, 130 (1992) (explaining that moot issues may not be considered on appeal).

While husband concedes that the November 24, 2008 order was appealable to this Court, he argues that the November 24, 2008 order was not a final order, so the trial court continued to have jurisdiction over this case and, therefore, acted within its authority when it vacated that order.[2]

---

[1] Husband has never asked this Court for permission to withdraw his appeal.

[2] This Court has jurisdiction over the appeal from the trial court's November 24, 2008 order that found husband guilty of contempt of court and imposed a sentence, even though the trial court then suspended imposition of that sentence in order to provide husband with an opportunity to purge the finding of contempt. See Peet v. Peet, 16 Va. App. 323, 326, 429 S.E.2d 487, 489-90 (1993) ("The fact that the court suspended execution of the sentence and continued the case until a date certain so that Richard Peet could purge himself of the civil contempt does not make the decree interlocutory. The contempt decree imposed a sentence and fully adjudicated all issues; it was final, and this Court has jurisdiction of the appeal.").

However, whether or not the November 24, 2008 order was final or interlocutory, the trial court did not have jurisdiction to vacate that order once husband noted his appeal to this Court.

When a party files a notice of appeal, that notice "effectively transfers jurisdiction from the lower court to the appellate court and places the named parties within the jurisdiction of the appellate court." Watkins v. Fairfax County Dep't of Family Servs., 42 Va. App. 760, 771, 595 S.E.2d 19, 25 (2004). As the Supreme Court of Virginia explained, "The orderly administration of justice demands that when an appellate court acquires jurisdiction over the parties involved in litigation and the subject matter of their controversy, the jurisdiction of the trial court from which the appeal was taken must cease." Greene v. Greene, 223 Va. 210, 212, 288 S.E.2d 447, 448 (1982); Frazer v. Frazer, 23 Va. App. 358, 379-80, 477 S.E.2d 290, 300 (1996) (finding the trial court lacked authority to modify a child support award after Mrs. Frazer had filed a notice appealing that award to this Court).

The trial court's March 26, 2009 order did not address a new enforcement action or stay enforcement of the contempt order pending the outcome of this appeal. Instead, the trial court actually withdrew the order that was appealed by appellant and was before this Court for consideration. Thus, the trial court simply did not have jurisdiction to enter the March 26, 2009 order[3] vacating the finding of contempt entered on November 24, 2008. This Court, therefore, can proceed to rule on husband's appeal from the November 24, 2008 order as that order is not moot.

## B. Health Insurance

Husband makes two arguments. First, he contends that the PSA unambiguously states that the providing of health insurance was a form of spousal support. Second, he contends that the trial court did not have the authority to order that he provide health insurance to wife.

---

[3] We do not comment one way or the other on the merits of the trial court's March 26, 2009 order as that order is not properly before us, given the trial court's lack of jurisdiction to enter that order while this appeal was pending.

The parties agree that the agreement is unambiguous, but disagree on what the agreement unambiguously intended. We agree with the parties and the trial court that the agreement was unambiguous. See Stacy v. Stacy, 53 Va. App. 38, 42 n.3, 669 S.E.2d 348, 350 n.3 (2008) (*en banc*) (noting that disagreements about the interpretation of a PSA do not require a finding that the PSA is ambiguous). However, we disagree with husband's interpretation of the PSA. Here, both the structure and the wording of the PSA clearly prove that husband's obligation to provide health insurance for wife was not a form of spousal support. See id. at 44, 669 S.E.2d at 350-51 (explaining that, when a PSA is plain and unambiguous, the courts must interpret the PSA as it is written).

First, the spousal support section and the insurance section are completely separate, with several sections regarding distribution of the marital assets and debt coming between them. Clearly, the insurance requirement is not included in the spousal support section – Section III of the PSA. Second, Section III, although using different wording for husband's waiver of support, clearly states that wife waives any request for support, except that she may request support if husband fails to fulfill his obligations under the PSA or attempts to discharge those obligations through bankruptcy. Husband's obligation to provide the insurance arose when he signed the agreement – not when he filed for bankruptcy or when he breached the PSA. Therefore, since the agreement defines spousal support as an obligation that will arise in the future due to husband's failure to abide by the agreement – and since husband's obligation to provide health insurance does not arise because he breached the agreement, health insurance is not a form of spousal support under Section III of the PSA.

- 5 -

Husband also argues that the trial court did not have any authority to order that he pay for the health insurance of wife.[4] He cites two cases on brief, Lassen v. Lassen, 8 Va. App. 502, 383 S.E.2d 471 (1989), and Day v. Day, 8 Va. App. 346, 381 S.E.2d 364 (1989), in support of his contention that the health insurance provision is void. However, both of these cases involve a trial court's authority in divorces where the parties had not signed a PSA. The trial courts in these two cases were acting solely under statutory authority to resolve controversies involving support and equitable distribution pursuant to Code §§ 20-107.1 and 20-107.3, rather than pursuant to an executed PSA, as is the case here.

Here, the trial court's authority to order husband to pay for wife's health insurance derived from the PSA that the parties signed and from Code § 20-109.1, which allows a trial court to incorporate into a final order the provisions of a valid PSA. See Code § 20-107.3(I). In fact, a trial court cannot deviate from those provisions when granting the divorce, unless for some reason the PSA is unenforceable.[5] See Code § 20-109(C); O'Hara v. O'Hara, 45 Va. App. 788, 796, 613 S.E.2d 859, 863 (2005). Therefore, even if the legislature did not give the trial court authority to unilaterally order that husband provide health insurance for wife after their divorce, husband and wife here gave the court authority to include this provision in the final decree when they signed the PSA and asked that it be incorporated into that final decree.

---

[4] Husband makes this argument in the context of an attack on the contempt citation, and he does not argue that he was never under any obligation to pay wife's insurance premiums. Therefore, we assume that he does not intend to make a collateral attack on the underlying final order, but instead presents this argument as a defense to the show cause. Wife does not argue that husband is attempting to collaterally attack the final decree.

[5] For example, if a PSA is not voluntarily executed, or if a PSA is unconscionable under the conditions described in Code § 20-151(A)(2), then a PSA is unenforceable. Code § 20-151(A); Galloway v. Galloway, 47 Va. App. 83, 622 S.E.2d 267 (2005) (discussing unconscionability).

As the provision for insurance was not spousal support, wife's contractual right to the insurance was not affected by her remarriage.  <u>See</u> Code §§ 20-109, 20-109.1, 20-110. Therefore, husband was still under an obligation, pursuant to the PSA and the final decree, to continuing making these payments.

### III.  CONCLUSION

The trial court did not err in finding that husband was required to provide wife with health insurance after her remarriage.  Thus, we affirm the finding of contempt.

<u>Affirmed.</u>