COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Petty and McCullough
Argued by teleconference


GAY H. GOODWIN
                                            MEMORANDUM OPINION[*] BY
v.      Record No. 1413-11-2             JUDGE STEPHEN R. McCULLOUGH
                                                   JUNE 5, 2012
JAMES V. FLINN


                   FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
                              Cheryl V. Higgins, Judge

            Ralph E. Main, Jr. for appellant.

            No brief or argument for appellee.


        Gay H. Goodwin ("wife") appeals from an order holding her in contempt for failing to fulfill

her obligations under the separation agreement with respect to the refinancing of the jointly owned

beach house.  She also appeals the order that she must reimburse her former husband, James V.

Flinn ("husband"), for her share of the educational expenses of one of their children, Katie, incurred

at the Georgia Tech College of Computing.  Goodwin raises eight assignments of error, which we

address in further detail below.  We affirm the trial court's finding of contempt with respect to the

refinancing of the beach house and reverse the court's order compelling wife to reimburse husband

for a share of the $4,665 expended by husband for Katie's educational expenses.

                                        BACKGROUND

        Wife and husband were divorced in November of 2007.  On September 20, 2007, prior to

the entry of the final divorce decree, the parties entered into a separation agreement that spelled out

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

the parties obligations with respect to the two marital homes and with regard to the education of the parties' children. This agreement was incorporated by the court into the divorce decree.

With regard to the education of the children, the separation agreement provides in paragraph 5 that "[t]he parties agree to share on a *pro rata* basis, as their gross annual incomes compare, to share the cost, expense and payments of any loans including the VPEP program associated with the college education of any of their children."

The parties owned two homes, the martial residence in Charlottesville, Virginia and a beach house in Corolla, North Carolina. The agreement specified in paragraph 7 that

> [i]n consideration of the sum of $50,000.00, Wife agrees to transfer all of her right, title and interest in and to the Beach Property, both real and personal, to Husband. Husband agrees to apply immediately upon endorsement of this Agreement by both parties for refinancing of the loans secured by the Beach House, relieving Wife of any and all liability for such loans. Upon Husband's qualification for refinancing, and providing Wife with documentation of his qualification, Wife agrees to immediately apply for refinancing of the loans secured by [the Charlottesville residence], relieving Husband of any and all liability for such loans. Husband agrees to transfer all of his right, title and interest in [the Charlottesville residence] to Wife. . . .
>
> Husband shall pay Wife $50,000.00 for her interest in the Beach House. This payment shall be secured by a Note and Deed of Trust, with the Note incurring 6% interest if the payment is not made in full within 30 days of endorsement of this Agreement by both parties . . . .

The agreement further states in paragraph 18 that "[e]ach party agrees to execute such other and further assurances or instruments as may be necessary to carry out the intent of this Agreement . . . ."

In March of 2009, wife and husband each filed petitions to show cause, contending that the other party was in breach of the agreement in various ways. As relevant here, husband argued that wife had failed to pay her share of the college loan expenses incurred on behalf of their daughter Katie and that wife was responsible for $1,890.87 of those expenses. Husband also argued that he had obtained refinancing for the beach house and was prepared to pay the $50,000 he owed wife

under the agreement at the closing of the loan but that wife refused to sign the documentation required for the simultaneous closing of the houses.

The only transcript in the record is a transcript of the trial court explaining its findings. Further complicating matters is the fact that the parties were not represented by counsel throughout most of the litigation. We do have the benefit of a statement of facts prepared by the trial court.

The record reflects that with respect to the educational expenses for the parties' daughter Katie, husband wrote a check in the amount of $4,665. The check is written on husband's credit card account and is dated August 9, 2006, approximately a year before the entry of the separation agreement. In an order dated June 17, 2011, the trial court declined to hold wife in contempt with respect to her failure to pay her share of the college expenses pursuant to the separation agreement, but ordered her to pay "her share of the college expenses pursuant to the Separation Agreement. The Court rules this expense includes monies placed on Mr. Flinn's credit card for Katie." Wife objected, contending that the payment on husband's credit card pre-dated the separation agreement and, therefore, she could not be in breach. On November 21, 2011, after the 21-day period to modify, suspend or vacate the order of June 17, 2011, the trial court wrote in its revised written statement of facts that "[t]he Court concedes the check written by the defendant in the amount of $4,665.00 was written in 2006, prior to the entry of the Property Settlement Agreement between the parties."

With respect to the houses, the trial court's order of June 17, 2011 provides in relevant part that:

> The finding of the Court based upon the evidence and after consideration of the arguments of counsel is the mortgage refinancing did not occur because the actions of Ms. Goodwin frustrated the process. The Court will order Ms. Goodwin to pay attorneys fees in the amount of $3000.00 to Mr. Flinn within 6 months of the date of the order. The Court will impose no further sanctions because as a consequence of the failure to refinance the

beach house, the property is in foreclosure, which the Court finds
will have long-term negative consequences to Ms. Goodwin.

Wife objected to this finding, noting that the court had not found her in contempt. In response to this objection, the court entered a new order on November 21, 2011, "nunc pro tunc" to the June 17, 2011 order, adding a sentence to the beginning of the first paragraph above, which provided that "The Court finds the plaintiff in contempt for . . . failing to cooperate with the refinancing of the beach house."

## ANALYSIS

### I. EDUCATIONAL EXPENSES

"Property settlement agreements are contracts; therefore, we . . . apply the same rules of interpretation applicable to contracts generally." Tiffany v. Tiffany, 1 Va. App. 11, 15, 332 S.E.2d 796, 799 (1985). This Court is not bound by the trial court's construction of the contract provisions at issue. Id.

The separation agreement, executed on September 20, 2007, obligates the parties to share the educational expenses of the children on a *pro rata* basis. The expenditure at issue was a check that husband wrote for their daughter Katie's expenses at the Georgia Tech College of Computing. The check was written on August 9, 2006 – before the parties executed the separation agreement. Wife was not legally bound under the separation agreement to share the educational expenses at the time husband made this expenditure. Moreover, the separation agreement contains no clause requiring wife to make those payments retroactively. We, therefore, reverse and remand so that the court may revise the parts of the order that compel wife to pay a share of educational expenses paid by husband prior to entry of the separation agreement.

### II. REAL ESTATE OBLIGATIONS UNDER THE SETTLEMENT AGREEMENT

Wife next assigns error to a number of rulings made by the trial court with regard to the beach house and the order entered by the trial court holding wife in contempt.

A.  Correction of the initial order "*nunc pro tunc*"

We first examine whether the trial court could enter an order on November 21, 2011, revising its order of June 17, 2011, "*nunc pro tunc*" (Latin meaning "now for then"), to expressly state that wife was found in contempt.  In an order dated November 21, 2011, the trial court noted that this correction was made to address a "clerical error" in the first order.

Wife first argues that the trial court's change to the order of June 17, 2011, was not a "clerical error," an "oversight error," or an "inadvertent omission" as contemplated by Code § 8.01-428(B).  Instead, she contends, it is a "substantive addition" to an otherwise complete order.  We lack a transcript of what transpired during the hearing on May 24, 2011.  The revised statement of facts prepared by the trial court reflects that "Ms. Goodwin was found to be in contempt" at the May 24 hearing.  The transcript of September 23, 2010, on page 13, also reflects the fact that wife had been held in contempt.  Therefore, the record establishes that the trial court initially found wife in contempt, that the order as originally drafted did not so reflect due to a clerical error, and that this error was corrected *nunc pro tunc*.  The fact that a clerical error may affect substantive rights does not alter the fact that such clerical errors may be corrected, provided the error truly is clerical in nature.  See Dorn v. Dorn, 222 Va. 288, 291-92, 297 S.E.2d 393, 394-95 (1981) (clerical error in the order assessing the amount of child support could be redressed *nunc pro tunc*).

Wife next argues that the appeal was "docketed" at the time the notice of appeal was filed and, by operation of Code § 8.01-428(B), the trial court was required to obtain leave of the appellate court before making a change to the order of June 17.  The trial court did not seek leave of this Court to alter its June 17 order.  We reject wife's arguments.

Ordinarily, "[w]hen a party files a notice of appeal, that notice 'effectively transfers jurisdiction from the lower court to the appellate court and places the named parties within the jurisdiction of the appellate court.'"  McCoy v. McCoy, 55 Va. App. 524, 528, 687 S.E.2d 82, 84

- 5 -

(2010) (quoting <u>Watkins v. Fairfax County Dep't of Family Servs.</u>, 42 Va. App. 760, 771, 595 S.E.2d 19, 25 (2004)). In this instance, a specific statute, Code § 8.01-428(B), controls with regard to when the trial court may alter an order. That statute provides as follows:

> Clerical mistakes. -- Clerical mistakes in all judgments or other parts of the record and errors therein arising from oversight or from an inadvertent omission may be corrected by the court at any time on its own initiative or upon the motion of any party and after such notice, as the court may order. During the pendency of an appeal, such mistakes may be corrected before the appeal is docketed in the appellate court, and thereafter while the appeal is pending such mistakes may be corrected with leave of the appellate court.

The plain language of Code § 8.01-428(B) allows a trial court to correct mistakes arising from oversight, so long as the appeal, which the statute presupposes is "pending," has not yet been "docketed." Rule 5A:16(c) provides in relevant part as follows: "Docketing. Cases shall be placed on the docket in the order in which they mature . . . ." Rule 5A:16(a), in turn, specifies that with respect to appeals of right, such as this one, an appeal "shall be considered mature for purposes of further proceedings from the date the record is filed in the office of the clerk of the Court of Appeals." Applying the plain language of this Rule, the case was mature, and therefore "docketed," when the record was filed in the office of the clerk of this Court. The record was filed on December 14, 2011, when it was received by the clerk of this Court. Therefore, the trial court was not required to seek leave of this Court to correct an "error [in the record] arising from oversight or from an inadvertent omission." The risk of confusion is obvious when a trial court sets about to correct a record when that record is lodged in the appellate court. In contrast, there is no risk of confusion between the appellate court and the trial court when a trial court corrects a record that is still in the trial court.[1]

---

[1] This reading of the Rules is consistent with Rule 5A:8(d), which provides that "[a]t any time while the record remains in the office of the clerk of the trial court, the trial court judge may, after notice to counsel and hearing, correct the transcript or written statement."

- 6 -

B. Wife's remaining contentions with regard to the beach house

Wife next contends that the trial court erred in ruling that the mortgage refinancing did not occur because the actions of wife frustrated the process. She argues that she should not have been held in contempt. She further assigns error to the trial court's failure to hold husband in contempt for not paying wife $50,000 and to the trial court's statement that the beach house went into foreclosure as a consequence of the failure to refinance. Finally, she assigns error to the trial court's refusal to grant her motion for reconsideration.

Paragraph 7 of the agreement provides in relevant part that "[i]n consideration of the sum of $50,000.00, Wife agrees to transfer all of her right, title and interest in and to the Beach Property, both real and personal, to Husband." The agreement further specified that

> [o]n the 31st day following the endorsement of this Agreement by both parties, Husband shall pay Wife $250.00 as accrued interest, with continued payments of $250 on the first of each month thereafter, until the $50,000.00 is paid in full. If the $50,000.00 and all accrued interest payments are not paid in full within 90 days from the date of endorsement of this Agreement by both parties or upon Husband's refinancing of the Beach House, whichever event shall first occur, the Note and Deed of Trust shall be recorded in the appropriate court of record.

The agreement contemplated that husband was to immediately apply for refinancing of the loans secured by the beach house to relieve wife of any and all liability for such loans. Finally, paragraph 18 of the agreement required each party to execute such instruments "as may be necessary to carry out the intent of this Agreement."

According to the statement of facts, husband obtained a loan commitment from a bank to refinance the beach house. He was also approved for a line of credit on the beach house in the amount of $40,000, and he additionally was approved for a credit of $15,000 on a credit card. He planned to use the line of credit and the $15,000 from the credit card to pay wife her interest

in the beach house.[2] The financing arrangement required husband "to execute the loan documents for both loans, wait for the three day rescission period to expire, record the deed and both deeds of trust and then pay Ms. Goodwin the $50,000.00 from the loan proceeds and the credit card loan." Wife declined to execute the loan documents, according to the statement of facts, "because she would have had to execute and deliver the deed several days in advance of receiving her money." The court also found that "[t]he refinance transactions did not close due to Ms. Goodwin's failure to sign the deed before she received the $50,000.00 that was to be paid to her." "As a result of the delay, [husband's] original refinancing deal fell through and there was an increase in interest rate and points." Husband later lost one of his two jobs, at which point he "ceased making payments on the Beach Property mortgage, and that property was subsequently foreclosed." The court stated that, beyond finding wife in contempt and imposing attorney's fees, it would "impose no further sanctions because as a consequence of the failure to refinance the beach house, the property is in foreclosure, which the Court finds will have long-term negative consequences for Ms. Goodwin."

Given the limited record before us, we find no basis to reverse the trial court's finding that husband fulfilled his obligations by obtaining a refinancing of the beach home and securing a loan from several sources to provide wife with $50,000. Wife, however, failed to cooperate as contemplated by the agreement, causing the financing arrangement to collapse. It is true, as wife notes, that "[n]o provision of the Agreement . . . obligated Wife to convey her interest in the Beach Property to Husband **prior** to receiving the bargained for purchase price." Appellant Br. at 8. By the same token, however, nothing in the plain language of the agreement required

---

[2] Wife contends that there were insufficient funds to cover the $50,000 payment to wife because the refinance would cost $8,557. We lack a transcript of the evidentiary hearing, and the statement of facts does not address what funds may have been available to husband in addition to the loans. Therefore, we will not address this argument for lack of a sufficient record.

- 8 -

husband to pay wife the $50,000 prior to wife conveying her interest. The intent of the agreement was for the husband and wife to cooperate, in no particular sequence, to disentangle the other from jointly owned real estate, and for husband to provide wife with $50,000 for her interest in the beach house. The agreement also obligated the parties to execute instruments as needed to carry out the intent of the agreement. Wife refused to execute an instrument necessary to consummate the transaction. The unsubstantiated possibility that husband might have breached the agreement with regard to the homes and placed wife in a difficult position, on these facts, did not constitute a justification for wife's actions. There is no indication husband intended to withhold the $50,000 from wife. For the same reason, we reject wife's assignment of error directed at the failure of the trial court to hold husband in contempt for not paying her the $50,000. Husband made a good faith effort to provide wife with the $50,000 for her interest in the beach house, and this effort was thwarted by wife's failure to cooperate. We, therefore, affirm the trial court's decision to hold wife in contempt as well as the court's denial of wife's motion to reconsider.

As to the trial court's statement in its order that "as a consequence of the failure to refinance the beach house, the property is in foreclosure," that statement was simply an explanation for why the trial court was not imposing a further sanction upon wife beyond the attorney's fees. It is not clear how wife is aggrieved by that statement. Moreover, the record furnishes no basis for reversal. "An appellate court must dispose of the case upon the record and cannot base its decision upon appellant's petition or brief, or statements of counsel in open court. We may act only upon facts contained in the record." Smith v. Commonwealth, 16 Va. App. 630, 635, 432 S.E.2d 2, 6 (1993). Moreover, "on appeal, the judgment of the lower court is presumed to be correct and the burden is on the appellant to present to us a sufficient record from which we can determine whether the lower court has erred in the respect complained of." Justis

v. Young, 202 Va. 631, 632, 119 S.E.2d 255, 256-57 (1961). "In the absence [of a sufficient record], we will not consider the point." Jenkins v. Winchester Dep't of Soc. Servs., 12 Va. App. 1178, 1185, 409 S.E.2d 16, 20 (1991). The trial court found that wife's actions prevented the success of this refinance. Husband then lost one of his jobs. The record does reflect that a considerable sum was owed on the beach house. The beach house then went into foreclosure.

### C. Attorney's fees

Wife assigns error to the trial court's order compelling her to pay $3,000 in attorney's fees. Wife first argues that fees were unwarranted because wife did not breach the agreement. We disagree, for the reasons noted above. The separation agreement provides that

> [i]n the event it is necessary for either party to employ counsel in connection with a breach of the terms of this Agreement after its execution, such non-breaching party shall be entitled to payment of attorney's fees and costs incident thereto if his or her position relative to such breach is substantially maintained by court order.

Having found wife in breach of the agreement, the court could impose attorney's fees.

Wife further argues that "there is nothing in the record which supports the amount of the award." "'[A]n award of attorney's fees is a matter submitted to the trial court's sound discretion and is reviewable on appeal only for an abuse of discretion.'" Richardson v. Richardson, 30 Va. App. 341, 351, 516 S.E.2d 726, 731 (1999) (quoting Graves v. Graves, 4 Va. App. 326, 333, 357 S.E.2d 554, 558 (1987)). "[T]he key to a proper award of counsel fees [is] reasonableness under all of the circumstances revealed by the record." McGinnis v. McGinnis, 1 Va. App. 272, 277, 338 S.E.2d 159, 162 (1985).

As wife points out, the record does not contain any billing statements from husband's attorney. The statement of facts, however, is silent with regard to what testimony husband might or might not have presented concerning attorney's fees. We will not presume error on a silent

record. Moreover, the record shows that counsel would have had to review the show cause prepared by wife, draft husband's show cause, and represent husband at an evidentiary hearing. A fee award of $3,000 is reasonable under the circumstances and does not constitute an abuse of discretion. Particularly given the barrenness of the record on this point, we find no basis to reverse the judgment of the trial court which, as noted above, is presumed correct.

## CONCLUSION

We reverse and remand the judgment below ordering wife to pay husband a share of the $4,665 paid by husband for their daughter Katie's expenses at the Georgia Tech College of Computing on August 9, 2006. We remand for the purpose of correcting the order with regard to this payment. In all other respects, the judgment below is affirmed.

<u>Affirmed in part,
reversed in part,
and remanded.</u>