COURT OF APPEALS OF VIRGINIA

Present:   Judges Alston, Chafin and Decker
Argued at Norfolk, Virginia


MAURICE DONTRELL BOYKINS

MEMORANDUM OPINION[*] BY
v.        Record No. 1487-16-1        JUDGE TERESA M. CHAFIN
                                      JUNE 6, 2017
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
Robert H. Sandwich, Jr., Judge

Thomas H. Sheppard, II (Sheppard Law, P.L.C., on brief), for
appellant.

Craig W. Stallard, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


At the conclusion of a bench trial held in the Circuit Court of the City of Suffolk,

Maurice Dontrell Boykins was convicted of multiple offenses based on his involvement in a

gunfight at a shopping center.[1]  On appeal, Boykins challenges the sufficiency of the evidence

supporting his convictions.  Boykins contends that the evidence presented by the Commonwealth

failed to establish that he participated in the gunfight.[2]  Additionally, he argues that the evidence

presented at trial failed to support his conviction for maliciously shooting into an occupied

building in violation of Code § 18.2-279 because it did not prove that he actually caused any

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Specifically, Boykins was convicted of malicious wounding, attempted murder, two
counts of use of a firearm in the commission of a felony, reckless handling of a firearm,
maliciously shooting into an occupied building, unlawful shooting in the commission of a felony,
and misdemeanor destruction of property.

[2] We have paraphrased and re-ordered Boykins's assignments of error so that we may
more efficiently address them in this appeal.

damage to the building in question. In a third assignment of error, Boykins challenges the sentence imposed by the circuit court for his attempted murder conviction, arguing that the imposed sentence exceeded the maximum sentence allowed by statute. For the reasons that follow, we affirm Boykins's convictions and remand this case for the correction of clerical errors regarding Boykins's sentences.

## I. BACKGROUND

"In accordance with established principles of appellate review, we state the facts in the light most favorable to the Commonwealth, the prevailing party in the trial court[, and] accord the Commonwealth the benefit of all inferences fairly deducible from the evidence." Riner v. Commonwealth, 268 Va. 296, 303, 601 S.E.2d 555, 558 (2004). So viewed, the evidence is as follows.

## A. THE GUNFIGHT AND RELEVANT EVIDENCE

The victim in the present case was attacked at an outdoor shopping center on the night of December 20, 2013.[3] As the victim walked along the sidewalk of the shopping center, an individual rushed him from behind and shot at him. Although the victim initially ran from his assailant, he eventually drew his own firearm from a holster on his hip and fired approximately seven shots at him. The assailant fled after exchanging gunfire with the victim in the parking lot of the shopping center. The victim was shot in his right arm during the course of the gunfight.

The victim initially identified Boykins as his assailant, and attributed the attack to an argument that he had with Boykins earlier that day. At Boykins's trial, however, the victim testified that Boykins was not the assailant. Although the victim acknowledged that he suffered from memory loss due to injuries that he sustained after the gunfight, he claimed that he knew Boykins did not shoot him.

_____

[3] The shopping center was described as a "strip mall" by various witnesses.

An employee at a restaurant located in the shopping center testified that she heard gunshots outside of the building around 9:00 p.m. on the night of the gunfight. The employee testified that approximately ten people were inside the restaurant when the shooting occurred. Following the shooting, the employee saw holes in the window of the restaurant that were not there before the shooting started. The employee explained that police officers arrived later that evening and collected "bullets" from a toy box located in the restaurant. While the employee heard gunshots outside of the building and observed the damage to the window of the restaurant, she could not identify the individuals involved in the gunfight.

After the shooting, the police obtained a video recording from a security camera at the shopping center that showed the beginning of the gunfight. The recording showed an individual wearing a green hooded shirt with white stripes on its sleeves shoot at the victim and chase him down the sidewalk of the shopping center.

A detective from the Suffolk Police Department was at a nearby hospital investigating an unrelated offense on the night of the shooting. While waiting in the emergency department of the hospital, the detective saw Boykins come into the hospital with what appeared to be a gunshot wound to his left arm. Although the detective was not aware of the recent gunfight at the shopping center, he approached Boykins and asked him how he had been injured. In response, Boykins stated: "I don't have anything to say. Anything you need to know is probably on a video at the shopping center." A test performed by another detective while Boykins was at the hospital eventually revealed the presence of primer residue on both of Boykins's hands.[4]

With the permission of Boykins's stepmother, police officers searched her apartment for evidence related to the gunfight. Although the police officers conducting the search did not find

___

[4] A forensic scientist testified that primer residue is also commonly referred to as "gunshot" residue.

a firearm in the apartment, they found a green hooded sweatshirt with white stripes on its sleeves. Notably, the shirt had a round hole in its left sleeve in the same area where Boykins had been shot in his arm. Boykins's stepmother admitted that he came to her apartment after he had been shot and removed his shirt, but she stated that she could not remember which shirt he was wearing on the night in question. She claimed, however, that the green shirt did not belong to Boykins.

In his defense, Boykins testified that he was not involved in the gunfight at the shopping center. He also denied that the green sweatshirt belonged to him. Boykins explained that he was shot by an unidentified man on the night of the gunfight after he was caught having sex with the man's wife. Additionally, Boykins explained that he made the statements about the video at the shopping center because other police officers at the hospital had already questioned him about the gunfight. Boykins admitted that he never told the police officers investigating the gunfight about the alleged cause of his injuries, and his paramour did not testify at trial. Boykins also admitted that he had been convicted of multiple felonies.

## B. THE TRIAL PROCEEDINGS

At Boykins's trial, the Commonwealth presented testimony from various witnesses establishing the aforementioned facts. Additionally, the green sweatshirt found at the home of Boykins's stepmother and the video recording of the beginning of the gunfight were admitted into evidence. Although the restaurant employee testified that the police recovered "bullets" from the restaurant, the Commonwealth did not provide any expert testimony regarding the forensic analysis of those objects. Furthermore, the Commonwealth failed to present any testimony regarding the positioning of the gunfight participants, the potential trajectory of their gunshots, or the specific location of the restaurant in the shopping center.

At the conclusion of the Commonwealth's evidence, Boykins moved to strike the evidence against him on multiple grounds. Boykins challenged each of the charges against him by arguing that the evidence presented failed to establish that he perpetrated the offenses. The circuit court denied Boykins's motion to strike based on that argument.

In the alternative, Boykins challenged the malicious shooting charge by arguing that the evidence failed to prove that the gunshots he may have fired during the gunfight actually struck the restaurant.[5] Specifically, Boykins contended that "there was never any testimony as to who actually was shooting at the building, even if you accept the Commonwealth's case." The Commonwealth responded that Boykins should be held accountable for the gunshots fired into the restaurant because he was "the catalyst for every activity that occurred" at the shopping center and that the actions taken by the victim while defending himself were "foreseeable consequences" of Boykins's attack. Boykins did not respond to this argument. The circuit court agreed with the Commonwealth and denied the motion to strike as it pertained to the malicious shooting charge, explaining that "while it wasn't specifically mentioned who in particular was the one whose bullets might have struck the [restaurant,] I think that is a foreseeable consequence of shooting in the parking lot."[6]

After presenting defense evidence, Boykins renewed his motion to strike. Boykins incorporated the arguments from his previous motion to strike to support his renewed motion without offering any additional argument or responding to the Commonwealth's theory of

---

[5] This argument did not extend to Boykins's misdemeanor destruction of property charge, as that charge was based on damage to a vehicle parked in the parking lot of the shopping center rather than the restaurant.

[6] The circuit court granted Boykins's motion to strike as it pertained to a second malicious shooting charge because the Commonwealth's evidence only established that one building was damaged during the gunfight.

criminal liability. The circuit court denied the renewed motion to strike without hearing additional argument from the Commonwealth.

In their closing arguments, the Commonwealth and Boykins focused on the circumstantial evidence linking Boykins to the shooting. Neither party referred to Boykins's prior argument regarding the malicious shooting charge. After hearing the parties' closing arguments, the circuit court convicted Boykins of the offenses at issue in this appeal. Although the circuit court provided a detailed ruling from the bench addressing the sufficiency of the evidence proving that Boykins attacked the victim at the shopping center, the circuit court did not specifically address the lack of evidence establishing which of the two men actually shot into the restaurant.

### C. THE SENTENCING PROCEEDINGS

On October 5, 2015, the parties reappeared before the circuit court for Boykins's sentencing hearing. At the conclusion of the hearing, the circuit court orally pronounced the sentences imposed for each of Boykins's convictions. Among other sentences not challenged in this appeal, the circuit court orally imposed a sentence of ten years of incarceration with five years suspended for Boykins's malicious wounding conviction and twenty years of incarceration with ten years suspended for Boykins's attempted murder conviction.

The circuit court entered sentencing orders pertaining to Boykins's convictions the following day. The sentences imposed in the orders for Boykins's malicious wounding and attempted murder convictions, however, did not correspond with the sentences for those convictions pronounced orally at the sentencing hearing. Rather, the sentencing orders stated that Boykins was sentenced to twenty years of incarceration with ten years suspended for the malicious wounding conviction and ten years of incarceration with five years suspended for the attempted murder conviction.

- 6 -

On November 4, 2015, the circuit court held a second hearing regarding Boykins's malicious wounding and attempted murder convictions. At that hearing, the circuit court explained that it misspoke when it orally pronounced Boykins's sentences for those convictions at the original sentencing hearing. Specifically, the circuit court judge told Boykins that, "I misspoke and I actually sentenced you on the attempted murder for what I was trying to sentence you to on the malicious wounding." The circuit court then explained that the October 6, 2015 sentencing orders correctly reflected the sentences that it intended to impose for the two convictions.

The circuit court entered an order memorializing the second hearing on November 6, 2015. That order, however, incorrectly stated the holding that the circuit court articulated from the bench on November 4, 2015. Although the circuit court expressly clarified that it intended to sentence Boykins consistently with the October 6, 2015 sentencing orders, the November 6, 2015 order stated that the circuit court advised Boykins that the sentence imposed for his malicious wounding conviction "is now [ten] years with [five] years suspended and that the sentence imposed in the charge of [a]ttempted [m]urder, . . . is now [twenty] years with [ten] years suspended . . . ."

## II. ANALYSIS

Boykins presents three assignments of error for appellate review. Two of those assignments challenge the sufficiency of the evidence supporting his convictions. First, he argues that the evidence presented by the Commonwealth failed to establish that he was the perpetrator of the charged offenses. Alternatively, he contends that the evidence did not establish that he actually shot into the restaurant that was damaged during the gunfight, and therefore, it was insufficient to support his conviction for maliciously shooting into an occupied building in violation of Code § 18.2-279. In his third assignment of error, Boykins maintains

that the circuit court erroneously imposed a sentence that exceeded the maximum sentence allowed by statute for his attempted murder conviction.

For the reasons that follow, we conclude that the evidence presented in this case was sufficient to establish that Boykins attacked the victim at the shopping center and initiated the gunfight that occurred there. We also conclude that Boykins is procedurally barred from pursuing his second assignment of error. Furthermore, while we agree with Boykins that the November 6, 2015 order referred to an excessive sentence pertaining to his attempted murder conviction, we conclude that it did so as the result of clerical error. Accordingly, we remand this case for the correction of that error pursuant to Code § 8.01-428.

### A. THE EVIDENCE WAS SUFFICIENT TO ESTABLISH THAT BOYKINS INITIATED THE GUNFIGHT AND SHOT THE VICTIM

When considering the sufficiency of the evidence on appeal, we "presume the judgment of the trial court to be correct" and reverse only if the trial court's decision is "plainly wrong or without evidence to support it." Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002); see also McGee v. Commonwealth, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (*en banc*). Under this standard, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). It asks instead whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (emphasis added) (quoting Jackson, 443 U.S. at 319). We do not "substitute our judgment for that of the trier of fact" even if our opinion were to differ. Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002). "This familiar standard gives full play to the responsibility of the trier of fact fairly to

resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319.

> Generally, there are two types of evidence presented during a trial - direct evidence and circumstantial evidence. Direct evidence is offered to prove as a fact the point in issue. Circumstantial evidence, by contrast, is offered to prove a fact not directly in issue, from which a fact in issue may reasonably be inferred.
> There is no distinction in the law between the weight or value to be given to either direct or circumstantial evidence. The finder of fact is entitled to consider all of the evidence, without distinction, in reaching its determination.

Commonwealth v. Hudson, 265 Va. 505, 512-13, 578 S.E.2d 781, 785 (2003).

"Circumstantial evidence is not viewed in isolation. 'While no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion.'" Id. at 514, 578 S.E.2d at 786 (quoting Derr v. Commonwealth, 242 Va. 413, 425, 410 S.E.2d 662, 669 (1991)).

In the present case, the combination of direct and circumstantial evidence presented by the Commonwealth amply supported the circuit court's conclusion that Boykins was the perpetrator of the offenses at issue. Boykins was linked to the shooting by the initial identification of the victim, his clothing, his wounds, the presence of primer residue on his hands, and his own statements to the police.

The video recording showing the beginning of the gunfight at the shopping center showed an individual in a hooded green shirt with white stripes on its sleeves shoot at the victim and chase him down the sidewalk. A gunfight between the assailant and the victim followed. Although the victim testified differently at trial, he initially identified Boykins as his assailant and attributed the cause of the attack to an argument he had with Boykins earlier that day.[7]

---

[7] The circuit court questioned the victim's motivation for changing his identification of the assailant, and expressly stated that it did not believe all of the victim's testimony at trial

Boykins was found at a nearby hospital seeking treatment for a gunshot wound in his arm shortly after the gunfight at the shopping center occurred, and the primer residue found on his hands implied that he had recently shot a firearm or been in close proximity to someone who had done so. Moreover, Boykins made statements to a detective at the hospital that linked him to the shooting. When the detective asked Boykins how he had been injured without referencing the gunfight at the shopping center, Boykins told him that everything he needed to know was "probably on a video at the shopping center," implying that he had been injured in the gunfight that occurred there.

Furthermore, a distinctive shirt similar to the one worn by the shooter in the recording was found at Boykins's stepmother's home later that evening. Boykins's stepmother testified that he had taken off his shirt at her home after he was shot that evening, and the green hooded shirt had a round hole in its sleeve corresponding to the location of Boykins's gunshot wound. Although Boykins's stepmother claimed that the shirt did not belong to Boykins, her testimony did not negate the possibility that he had been wearing it earlier that evening.

While Boykins testified that he was not involved in the shooting, the circuit court was at liberty to discount his self-serving statements. See Armstead v. Commonwealth, 56 Va. App. 569, 581, 695 S.E.2d 561, 567 (2010). "[D]etermining the credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact." Parham v. Commonwealth, 64 Va. App. 560, 565, 770 S.E.2d 204, 207 (2015). Although Boykins claimed at trial that he was shot by someone else at a different location on the night in question, he never informed the police of the alleged alternative cause of his injuries during their investigation and

_____

because he contradicted himself several times. "The trier of fact is not required to accept a party's evidence in its entirety, but is free to believe or disbelieve, in whole or in part, the testimony of any witness." English v. Commonwealth, 43 Va. App. 370, 371, 598 S.E.2d 322, 323 (2004).

- 10 -

failed to present any independent evidence corroborating the alibi he asserted at trial. Additionally, his attempts to explain the statements he made to the detective about the shopping center conflicted with the detective's testimony. The detective testified that he spoke to Boykins shortly after he saw him come into the hospital, suggesting that Boykins had not spoken to other police officers at the hospital before he spoke to the detective. Under these circumstances, the circuit court understandably rejected Boykins's testimony.

In summary, the evidence presented by the Commonwealth was sufficient to permit the circuit court to conclude that Boykins initiated the gunfight at the shopping center and shot the victim. As Boykins only challenged the majority of his convictions on the ground that the evidence failed to establish that he was the perpetrator of the offenses, we affirm the convictions on which appellate review was limited to this issue. Accordingly, we affirm Boykins's convictions of malicious wounding, attempted murder, two counts of use of a firearm in the commission of a felony, reckless handling of a firearm, unlawful shooting in the commission of a felony, and misdemeanor destruction of property.

## B. BOYKINS WAIVED HIS ASSIGNMENT OF ERROR PERTAINING TO HIS MALICIOUS SHOOTING CONVICTION

On appeal, Boykins contends that the evidence presented by the Commonwealth was insufficient to establish that he maliciously shot into an occupied building in violation of Code § 18.2-279. While Boykins generally contends that the evidence failed to establish that he was the perpetrator of all of the offenses for which he was convicted, he presents a separate challenge regarding his malicious shooting conviction. Citing the lack of expert testimony regarding the forensic analysis of the objects recovered from the restaurant and the lack of any testimony regarding the positioning of the gunfight participants and the trajectory of their gunfire, Boykins argues that the Commonwealth's evidence failed to prove that he actually fired a gunshot into the restaurant damaged during the gunfight. Given the Commonwealth's evidence, Boykins

contends that it was equally probable that the gunshots fired by the victim caused the damage to the restaurant. Boykins then argues that he cannot be held responsible for the victim's negligent acts.

As a preliminary matter, the Commonwealth contends that Boykins did not adequately preserve his argument concerning this issue. We agree.

Rule 5A:18 states, in pertinent part, "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice."

> Under this rule, a specific argument must be made to the trial court at the appropriate time, or the allegation of error will not be considered on appeal. A general argument or an abstract reference to the law is not sufficient to preserve an issue. Making one specific argument on an issue does not preserve a separate legal point on the same issue for review.

Edwards v. Commonwealth, 41 Va. App. 752, 760, 589 S.E.2d 444, 448 (2003) (*en banc*) (citations omitted).

Although Boykins made a specific motion to strike arguing that the Commonwealth's evidence failed to establish that he actually damaged the restaurant, the Commonwealth contends that Boykins waived his appellate argument by failing to expressly challenge the theory of liability argued by the Commonwealth in response to his motion. After Boykins asserted that the Commonwealth had failed to prove that he actually fired the gunshots that damaged the restaurant, the Commonwealth argued that Boykins should be held accountable for any gunshots the victim may have fired into the restaurant because the victim's acts of self-defense were "foreseeable consequences" of Boykins's attack. The circuit court accepted this theory, and explained that "while it wasn't specifically mentioned who in particular was the one whose

bullets might have struck the [restaurant,] I think that is a foreseeable consequence of shooting in the parking lot."

While the circuit court did not mention the proximate causation theory when it convicted Boykins of the malicious shooting offense, the record supports the inference that the circuit court relied on that theory of liability. As the Commonwealth's evidence failed to prove that Boykins actually fired a gunshot into the restaurant, the circuit court must have based his conviction on the proximate causation theory that it previously accepted when the Commonwealth presented it in response to Boykins's initial motion to strike.

The principles of proximate causation on which the Commonwealth and the circuit court apparently relied have never been addressed in the context of Code § 18.2-279 by an appellate court of Virginia. These principles are typically applied in involuntary manslaughter cases. See, e.g., Brown v. Commonwealth, 278 Va. 523, 685 S.E.2d 43 (2009); Gallimore v. Commonwealth, 246 Va. 441, 436 S.E.2d 421 (1993). On appeal, however, Boykins does not contend that these principles are inapplicable to the present case.

In his appellate brief, Boykins quotes Hawkins v. Commonwealth, 64 Va. App. 650, 655, 770 S.E.2d 787, 789 (2015), to acknowledge that "[t]he concept of proximate causation is 'applicable in both civil and criminal cases.'" He then expressly concedes that he was responsible for the foreseeable consequences of his criminal negligence. Nevertheless, Boykins argues that the actions taken by the victim in this case were unforeseeable, intervening events that broke "any causal connection between his criminal negligence and the ultimate injury."

We acknowledge that "[o]ur fidelity to the uniform application of law precludes us from accepting concessions of law made on appeal." Logan v. Commonwealth, 47 Va. App. 168, 172, 622 S.E.2d 771, 773 (2005) (*en banc*). For that reason, we expressly state that we reach no opinion as to whether the principles of proximate causation apply under the circumstances of this

- 13 -

case. As Boykins failed to raise any argument in the circuit court pertaining to the principles of proximate causation or make any objections on that basis, however, we conclude that he has waived this issue for appellate review.

Regardless of its propriety or impropriety, the decision of the circuit court based on proximate causation principles constituted an alternate theory supporting Boykins's conviction. Although Boykins argued that the evidence failed to prove that he actually damaged the restaurant, the circuit court concluded that it did not matter whether Boykins or the victim damaged the restaurant because such damage was a foreseeable consequence of Boykins's attack. Boykins failed to respond to the Commonwealth's argument advocating this approach in his motions to strike or closing argument, and he never objected to the circuit court's decision on these grounds. Moreover, he never argued that the actions of the victim constituted an unforeseeable, intervening event that relieved him of criminal liability.

In light of the lack of evidence establishing the identity of the individual that actually fired gunshots into the restaurant, the proximate causation theory of liability argued by the Commonwealth and relied on by the circuit court was central to Boykins's malicious shooting conviction. Boykins's argument concerning the Commonwealth's failure to prove that he actually shot into the restaurant, however, does not encompass the proximate causation theory of liability (i.e., that Boykins was responsible for the actions of the victim because they were foreseeable consequences of his criminal conduct). As Boykins failed to object to the circuit court's application of proximate causation principles at trial or argue that those principles were inapplicable to his case as a matter of law, we conclude that Boykins has waived the issues presented in his second assignment of error. Accordingly, we affirm his conviction of maliciously shooting into an occupied building in violation of Code § 18.2-279.

C. THE NOVEMBER 6, 2015 ORDER INCORRECTLY STATED BOYKINS'S SENTENCES FOR MALICIOUS WOUNDING AND ATTEMPTED MURDER

Boykins contends that the November 6, 2015 order erroneously imposed a sentence that exceeded the maximum sentence permitted by statute for his attempted murder conviction. We agree that the order referred to an excessive sentence. Attempted murder is a Class 4 felony punishable by a term of up to ten years of incarceration. See Code §§ 18.2-10, 18.2-26, and 18.2-32. The November 6, 2015 order, however, stated that the circuit court advised Boykins that "the sentence imposed in the charge of [a]ttempted [m]urder, . . . is now [twenty] years with [ten] years suspended . . . ."[8]

Although the November 6, 2015 order referred to an excessive sentence regarding Boykins's attempted murder conviction, we conclude that this reference was a clerical error.[9]

_____

[8] On appeal, Boykins concedes that he failed to object to the imposition of this sentence and requests us to review the issue pursuant to the ends of justice exception to Rule 5A:18. We acknowledge that the ends of justice exception would permit us to review this issue despite Boykins's failure to object to the sentence before the circuit court. See, e.g., Gordon v. Commonwealth, 61 Va. App. 682, 685, 739 S.E.2d 276, 278 (2013) (holding that the imposition of an excessive sentence justifies the application of the ends of justice exception to Rule 5A:18).

[9] While we conclude that the excessive sentence referenced in the November 6, 2015 order was clerical error, we note that the circuit court did not have the authority to substantively modify Boykins's sentences when it entered the erroneous order. Pursuant to Rule 1:1, the circuit court could not modify the sentencing orders more than twenty-one days after the date on which they were entered. See Rule 1:1. In the present case, the November 6, 2015 order was entered thirty days after the sentencing orders were entered. Although Code § 19.2-303 provides an exception to Rule 1:1 and would have permitted the circuit court to modify Boykins's sentences if he had not been transferred to a receiving unit of the Department of Corrections, see Code § 19.2-303, the record failed to establish whether Boykins had been transferred to the Department of Corrections by November 6, 2015.
Notwithstanding the limitations provided by Rule 1:1, the circuit court also could not modify Boykins's sentences on November 6, 2015 because Boykins had already filed his notice of appeal with this Court. Subject to limited exceptions not applicable here, "[w]hen a party files a notice of appeal, that notice 'effectively transfers jurisdiction from the lower court to the appellate court and places the named parties within the jurisdiction of the appellate court.'" McCoy v. McCoy, 55 Va. App. 524, 528, 687 S.E.2d 82, 84 (2010) (quoting Watkins v. Fairfax Cty. Dep't of Family Servs., 42 Va. App. 760, 771, 595 S.E.2d 19, 25 (2004)); see Velazquez v. Commonwealth, 292 Va. 603, 613-15, 791 S.E.2d 556, 560-61 (2016) (discussing a statutory

While the order stated that Boykins was sentenced to twenty years of incarceration for his attempted murder conviction, the record in this case clearly established that the circuit court intended to sentence Boykins to ten years of incarceration for that offense. At the hearing preceding the November 6, 2015 order, the circuit court explained that it had misspoken at Boykins's original sentencing hearing and inadvertently interchanged the sentences for Boykins's malicious wounding and attempted murder convictions. The circuit court then explained that it intended to impose the sentences stated in Boykins's sentencing orders: twenty years of incarceration with ten years suspended for the malicious wounding conviction and ten years of incarceration with five years suspended for the attempted murder conviction.

Code § 8.01-428(B) provides that:

> Clerical mistakes in all judgments or other parts of the record and errors therein arising from oversight or from an inadvertent omission may be corrected by the court at any time on its own initiative or upon the motion of any party and after such notice, as the court may order. During the pendency of an appeal, such mistakes may be corrected before the appeal is docketed in the appellate court, and thereafter while the appeal is pending such mistakes may be corrected with leave of the appellate court.

Pursuant to Code § 8.01-428, we remand this case to the circuit court for the correction of the clerical errors contained in the November 6, 2015 order. Although the order stated that Boykins was sentenced to ten years of incarceration for his malicious wounding conviction and twenty years of incarceration for his attempted murder conviction, the circuit court expressly stated that it intended to sentence him to twenty years of incarceration for his malicious

---

exception involving a trial court's ability to consider motions to withdraw guilty pleas pursuant to Code § 19.2-296).

Although these procedural barriers prevented the circuit court from modifying the sentencing orders entered on October 6, 2015, the circuit court did not attempt to modify the sentencing orders in this case. Rather, the circuit court expressly stated that those orders correctly stated the sentences that it intended to impose for Boykins's malicious wounding and attempted murder convictions. But for the clerical error, the November 6, 2015 order would have been consistent with Boykins's prior sentencing orders.

wounding conviction and ten years of incarceration for his attempted murder conviction pursuant to his original sentencing orders. Accordingly, we remand this case and direct the circuit court to correct the November 6, 2015 order to properly reflect the sentences actually imposed for the convictions at issue.

## III. CONCLUSION

In summary, we conclude that the evidence presented by the Commonwealth supported Boykins's convictions. The evidence was sufficient to establish that Boykins perpetrated the charged offenses. Although the evidence failed to establish that Boykins actually shot into the restaurant damaged during the gunfight, we conclude that Boykins has waived his appellate argument concerning this issue by failing to challenge the proximate causation theory argued by the Commonwealth and relied on by the circuit court. We also remand this case for the correction of clerical errors regarding Boykins's attempted murder and malicious wounding convictions contained in the November 6, 2015 order. For these reasons, we affirm Boykins's convictions and remand this case for the correction of clerical errors pursuant to Code § 8.01-428.

Affirmed and remanded.